# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BYRON SHANE CHUBBUCK,[1] | |
| Plaintiff, | CIVIL ACTION NO. 1:14-cv-01847 |
| v. | (CALDWELL, J.) <br> (SAPORITO, M.J.) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

---

[1] Chubbuck appears to subscribe to the specious "redemptionist" theory, common among individuals in the sovereign citizen, militia, and tax protestor movements. Adherents to this "redemptionist" theory believe

> that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1993, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free.

*Monroe v. Beard*, 536 F.3d 198, 203 n.2 (3d Cir. 2008). Another hallmark is the use of "copyrighted" personal names, *see Monroe*, 536 F.3d at 203 & n.2. Here, the plaintiff has referred to himself in the caption and the body of his complaint as "Byron Shane of Chubbuck©," "Byron Shane of Chubbuck© Clan," and "Byron Shane of Chubbuck© Clan, Sovereign Cherokee." (Doc. 1, at 1–6). The Court declines to participate in this sophomoric exercise, and has docketed this case simply as having been brought by Byron Shane Chubbuck, his real and legal name. The style of his name in the caption is of no legal significance in any event, but merely identifies Chubbuck as the party bringing this action. *See Jaeger v. Dubuque County*, 880 F. Supp. 640, 643–44 (N.D. Iowa 1995).

This is a negligence action brought against the United States under the Federal Tort Claims Act ("FTCA"). In his complaint, *pro se* prisoner-plaintiff Byron Shane Chubbuck has asserted a state-law negligence claim against the United States arising out of the alleged failure of the U.S. Bureau of Prisons and its employees to exercise due care for the safety of Chubbuck, an inmate at USP Lewisburg, a federal prison located in Union County, Pennsylvania.[2] The United States has moved for summary judgment on the grounds that Chubbuck failed to exhaust administrative remedies before filing suit and that his claims are barred by the favorable termination rule enunciated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 17).

---

[2] *See generally* 18 U.S.C. § 4042; *United States v. Muniz*, 374 U.S. 150, 165–66 (1963) (noting that § 4042 established "the duty of care owed by the Bureau of Prisons to federal prisoners" in the context of negligence claims under the FTCA); *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987) ("The FTCA renders the United States answerable in damages for the simple negligence of its employees in failing to protect federal prisoners. Under the FTCA, the law of the place where the alleged act or omission occurred is to be applied. Nevertheless, 18 U.S.C. § 4042 governs the government's duty of care in cases involving injury to federal prisoners.") (citations omitted). The complaint also alleges, in cursory fashion, the deprivation of Chubbuck's constitutional rights, but constitutional claims are not cognizable under the FTCA, which only waives sovereign immunity with respect to negligence actions against the United States. *See Harper v. Williford*, 96 F.3d 1526, 1528 (D.C. Cir. 1996).

For the reasons that follow, it is recommended that this action be dismissed *sua sponte* for lack of subject matter jurisdiction and the United States' motion for summary judgment be denied as moot.

I. BACKGROUND

Chubbuck claims that on April 14, 2014, he and his cellmate were being escorted to recreation by corrections officer Terry Bingaman and a second unidentified corrections officer. Chubbuck claims that he heard Bingaman say, "There has to be a way to go to DC and kill [President] Obama." (Doc. 1, at 3). Chubbuck claims he objected and the two corrections officers threatened to beat or kill him. (*Id.*). Chubbuck claims the two officers made similar threats a second time before recreation time was over. (*Id.* at 4). Over the next several days, Chubbuck claims that he was refused recreation time and told by unidentified prison staff members that he "need[ed] to learn a hard[,] painful lesson," that he "file[d] too much," and that he "need[ed] to mind [his] o[w]n business[,] not what staff say or do." (*Id.*).

Chubbuck claims that, on April 17, 2014, he informed his counselor of these threats, and he was immediately moved to a new cell block. (*Id.* at 5). After the move, he "got into a cage fight for an unknown reason," and

apparently in the aftermath of the cage fight, while he was lying prone on the ground, corrections officer Lieutenant Seeba pepper-sprayed him three times and said, "OK Chubbuck[,] you retard motor mouth[,] here is a present from your hero Obama. And now I[']ll make sure your mail don't go out." (*Id.*). Chubbuck claims that a second, female corrections officer was also present, and she parroted Seeba's statements. (*Id.*). Chubbuck claims that approximately sixty of his letters were held between July 1, 2014, and August 4, 2014, the date he wrote his complaint. (*Id.* at 5–6).

On or about August 4, 2014, Chubbuck prepared and signed an administrative tort claim relating the alleged events described above, which he mailed to the Northeast Regional Office ("NERO") of the Bureau of Prisons ("BOP") for administrative adjudication under the FTCA. (Doc. 18-2, at 15–20). In his administrative tort claim, Chubbuck requested $12,000 in damages plus a restraining order to prevent USP Lewisburg corrections officers from abusing prisoners in the future. (*Id.* at 20). Chubbuck's administrative tort claim was received by NERO on September 4, 2014, and assigned FTCA Claim No. TRT-NER-2014-06585. (*Id.* at 15, 21, 22). On October 8, 2014, NERO sent a letter to Chubbuck acknowledging its receipt of his administrative tort claim on September 4,

2014, and advising him that, under the FTCA, the agency was permitted up to six months from that date to review, consider, and adjudicate Chubbuck's claim. (*Id.* at 22). On or about January 8, 2015, Chubbuck mailed an amendment to his administrative tort claim to NERO, alleging additional threats and harassment by Bingaman and other corrections officers since the filing of his administrative tort claim, and increasing his demand for damages to $15,000. (Doc. 29, at 26–29; *see also id.* at 20 (referencing demand for $15,000 in damages)). On February 26, 2015, NERO mailed Chubbuck a final decision denying his administrative tort claim, less than six months after it was received by the agency. (*Id.* at 20).

In the meantime, however, Chubbuck had filed his complaint initiating this civil action. (Doc. 1). The complaint filed in this action is actually a photocopy of the original administrative tort claim previously submitted to NERO for administrative adjudication, but with a different cover page substituted in place of the original. (*Compare* Doc. 18-2, at 15–20, *with* Doc. 1, at 1–6). Except for the caption and some prefatory recitals, Chubbuck's complaint in this civil action and his original administrative tort claim are substantively identical. (*Id.*). Chubbuck presented his civil complaint to prison officials for mailing on September 18, 2014. (Doc. 1, at

9). It was received and filed by the Court on September 23, 2014. (*Id.* at 1).

On January 12, 2015, the United States filed its motion for summary judgment, together with a statement of material facts and a brief in support of the motion. (Doc. 17; Doc. 18; Doc. 19).

On January 15, 2015, Chubbuck mailed a document captioned "Tort Claim Amendment," which was received and filed by the Court on January 22, 2015. (Doc. 22). By this document, Chubbuck sought to amend his original complaint to allege additional threats by Bingaman on January 12 and 14, 2015. (*Id.*) Chubbuck also sought to amend the *ad damnum* clause of his complaint to seek a total of $20,000 in damages. (*Id.*). Chubbuck did not, however, file a corresponding motion requesting leave to amend his complaint.[3]

On or about January 22, 2015, Chubbuck mailed his brief in opposition to the United States' motion for summary judgment, together with supporting exhibits, which were received and filed by the Court on January 29, 2015. (Doc. 25). On February 17, 2015, the United States filed a reply brief. (Doc. 28). On March 5, 2015, Chubbuck mailed a sur-reply

---

[3] Even if he did, leave necessarily would have been denied on the ground that amendment is futile in light of the Court's lack of jurisdiction over Chubbuck's FTCA claim.

brief in opposition to the United States' motion for summary judgment, together with supporting exhibits, which were received and filed by the Court on March 11, 2015. (Doc. 29).

## II. RULE 12(B)(1) STANDARD

Although the United States has not filed a Rule 12(b)(1) motion in this action, the Court is permitted to raise the issue of subject matter jurisdiction *sua sponte*. *See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* . . . ."); *Johnson v. United States*, Civil No. 1:CV-08-0816, 2009 WL 2762729, at *2 (M.D. Pa. Aug. 27, 2009).

> Technically, a motion for summary judgment is not the proper method to challenge subject matter jurisdiction. However, the Court may treat the Fed. R. Civ. P. 56 motion either as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or as a "suggestion" under Fed. R. Civ. P. 12(h)(3) that the Court is without jurisdiction.

*Walls v. United States*, 651 F. Supp. 1049, 1050 (S.D. Ind. 1987). Based on the pleadings and the materials submitted in connection with the pending summary judgment motion, in which the United States principally contends that Chubbuck failed to exhaust administrative remedies, we

find it appropriate to treat the United States' motion as a suggestion that the Court is without jurisdiction and to recommend *sua sponte* dismissal for lack of jurisdiction pursuant to Rule 12(b)(1).

The plaintiff bears the burden of establishing the existence of subject matter jurisdiction under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant

has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the latter category.

## III. DISCUSSION

This Court lacks subject matter jurisdiction over Chubbuck's FTCA claim because he initiated this civil action prior to receipt of a final decision on his administrative tort claim.

"The FTCA precludes suit against the United States unless the claimant has first presented the claim to the relevant Federal agency and the claim has been finally denied." *Lightfoot v. United States*, 564 F.3d 625, 626 (3d Cir. 2009). In pertinent part, the FTCA provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the

agency in writing and sent by certified or registered mail. 28 U.S.C. § 2675(a). If the agency does not act within six months, the failure to issue a decision may be treated as a final decision by the claimant. *Id.*; *see also Accolla v. U.S. Gov't*, 369 Fed. App'x 408, 410 (3d Cir. 2010) (per curiam). "The final denial requirement is 'jurisdictional and cannot be waived.'" *Lightfoot*, 564 F.3d at 627; *see also McNeil v. United States*, 508 U.S. 106, 111–13 (1993) (affirming dismissal of premature FTCA claim for lack of jurisdiction); *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) ("[T]he requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived.").

Here, the record indicates that Chubbuck initially presented his administrative tort claim to the BOP on September 4, 2014. *See* 28 C.F.R. § 14.2(a) ("[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident . . . ."); *see also Anderson v. United States*, 744 F. Supp. 641, 643 (E.D. Pa. 1990) ("The mere mailing of an

administrative claim will *not* satisfy the requisite presentment.").[4] Moreover, Chubbuck's amendment to his administrative tort claim on or about January 8, 2015, restarted the six-month period for the agency to decide his administrative tort claim. *See* 28 C.F.R. § 14.2(c); *Accolla*, 369 Fed. App'x at 410. A final decision denying his administrative tort claim was issued on February 26, 2015, before the six-month period expired.

Meanwhile, Chubbuck instituted this FTCA action in federal court in September 2014, well before either the February 2015 denial of his administrative tort claim or the expiration of the applicable six-month

---

[4] Chubbuck argues that his claim was actually presented to the agency in late April or May 2014, when he sent letters to the Director of the BOP and the Attorney General of the United States complaining about the corrections officers' statements regarding President Obama. (Doc. 25, at 2; Doc. 25-1, at 5; *id.* at 8 (letter to Attorney General dated April 20, 2014); *id.* at 9 (letter to BOP Director dated April 20, 2014); *id.* at 10 (letter to Attorney General dated April 29, 2014). But none of these letters includes a monetary demand, which is a necessary element of presenting an FTCA claim. *Walker v. United States*, __ Fed. App'x ___, 2015 WL 3609457, at *2 (3d Cir. June 10, 2015) (six-month period did not commence upon mailing of letter to agency that did not include demand for money damages); *see also* 28 C.F.R. § 14.2(a); *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 460 (3d Cir. 2010) ("[I]n the absence of a demand for a sum certain jurisdiction is lacking . . . ."); *Anderson*, 744 F. Supp. at 643 ("Because of the failure of the letter to comply with the FTCA's requirement of stating money damages in a sum certain, this letter cannot be regarded as a proper administrative claim."). Moreover, even if the earliest of these letters had included a monetary demand, this action was filed more than a month before the six-month period would have expired.

period after which an agency failure to respond could be treated as a final decision. Accordingly, Chubbuck has "violated the strict requirement that administrative exhaustion must be complete *before* a party may institute a civil action in District Court under the FTCA." *Wadhwa v. Nicholson*, 367 Fed. App'x 322, 325 & n.5 (3d Cir. 2010) (per curiam) (citing *McNeil*, 508 U.S. at 112–13); *see also Smith v. Riley*, Civil No. 14-7247, 2015 WL 4615913, at *5 & n.4 (D.N.J. July 31, 2015). As a result, this Court lacks jurisdiction to rule on his FTCA claim and the action must be dismissed. *See McNeil*, 508 U.S. at 111–13; *Accolla*, 369 Fed. App'x at 410.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint in this action (Doc. 1) be **DISMISSED without prejudice** for lack of subject matter jurisdiction and the United States' motion for summary judgment (Doc. 17) be **DENIED as moot**.

Dated: September 22, 2015        *s/ Joseph F. Saporito, Jr.*
                                 **JOSEPH F. SAPORITO, JR.**
                                 **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BYRON SHANE CHUBBUCK, | |
| Plaintiff, | CIVIL ACTION NO. 1:14-cv-01847 |
| v. | (CALDWELL, J.)<br>(SAPORITO, M.J.) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

# **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated September 22, 2015. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: September 22, 2015     *s/ Joseph F. Saporito, Jr.*
**JOSEPH F. SAPORITO, JR.
United States Magistrate Judge**